

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE RANDLE, | ) |
| Plaintiff, | ) Case No. 04 C 4129 |
| v. | ) Judge Blanche M. Manning |
| GLENDALE NISSAN, INC. | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Defendant Glendale Nissan's ("Glendale") motion to dismiss plaintiff's complaint alleging violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("CFA") and the federal Truth-in-Lending Act ("TILA") is before the court. For the following reasons, the motion is denied in part and granted in part.

### I.     BACKGROUND

For purposes of this motion to dismiss, the court accepts all well-pleaded facts as true. *See Alicea-Hernandex v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). On or around June 2003, Plaintiff Bonnie Randle ("Randle") received an advertisement from Glendale that stated she was pre-approved for an automobile loan. The advertisement also stated that Glendale would help re-establish her credit and asked her to call a bankruptcy expert, Mr. Anthony. Randle called the telephone number provided and gave a representative all of her personal information to run a credit check. The representative informed Randle that she was

1

approved for a loan and instructed her to come to the Glendale dealership to purchase a car.

That same day, Randle went to Glendale and met with salesman, Paul Oddo. Randle informed Oddo that she was interested in purchasing a vehicle that was not expensive with monthly car payments in the range of $350 to $400 a month. Oddo told Randle this was fine and not to worry. Randle then looked at several vehicles and indicated that she wanted to buy a 2003 Geo Tracker with a price of $12,000. Oddo told Randle that the bank would not approve that car; rather, the bank would approve a Dodge Stratus, a Grand Am, and another unspecified car. Prices for these cars were approximately $15,000 or higher. Randle, not believing Oddo, asked another salesman, who confirmed what Oddo had told her. Randle then chose a 2003 Grand Am, which did not have a price tag, and asked how much the Grand Am cost. Oddo told Randle that the car cost $15,995.00. Randle test drove the Grand Am and decided to purchase it.

Randle asked Oddo how much she could get for a trade-in allowance on her then-current car, and Oddo told her Glendale would give her $6,000—$3,000 would be used to pay off the existing lien and the remaining $3,000 would be used as a downpayment for the Grand Am. Randle then met with finance manager Gary Hall. When Randle met with Hall she told him that she wanted her monthly payment to range between $350 and $400, and that she did not want to go over that amount. Hall told Randle that for the car she chose, her note would be about $10.00 over the amount she wanted to spend. Randle agreed to this but did not want her monthly payment on the note to be above $410.

Hall gave Randle all of the necessary paperwork, which was already prepared before she had entered Hall's office. While Randle was in Hall's office, he informed her that they had found a bank called KeyBank to finance her car. Randle then began signing the paperwork

2

without reading it carefully. While she was signing the paperwork, Hall told Randle that her payments would be $471.82, and at this time Randle stopped signing the paperwork. Randle questioned Hall about the monthly payment amount and he said this was the best he could do. Randle felt that she had no other choice but to continue especially because she had already signed most of the paperwork. Randle then drove home with the Grand Am. At her house, Randle showed her boyfriend the paperwork who noticed that the documents indicated that the price of the car was $21,995.00.

Randle called Hall and asked why the price of the car went from $15,995 to $21,995. Hall stated that the price of the car did not go up and "that was the way they do their paperwork." Comp. at ¶ 32. Randle told Hall that this was not the way they did her paperwork, and what they had done was "take my trade-in and add[] the cost of the trade-in to the price of my car or words to that effect." *Id.* at 33. Randle and Hall argued and finally Hall said that he really did not give her anything for the trade-in and that she could come back and buy back her trade-in for $1.00, but that Randle would have to buy it back in someone else's name. Randle agreed. During that conversation, Randle also stated that she wanted Hall to send her the figures that prove they did not charge her $21,995 as the sale price of the car and Hall agreed. On or around July 1, 2003, Hall faxed Randle the buyer's order.

Approximately two hours after their telephone conversation, Hall called Randle and told her that they had sold her trade-in and that he would have to get the car back. Randle agreed. Approximately two days later, Randle called Hall and told her that they had her trade-in but she would have to wait for them to get the keys because the person who bought it was out of town. Randle knew that Hall was lying to her. After this conversation, Randle called Hall almost every

day for two weeks and each time he told her that he would have to get the keys for her trade-in. Based on these facts, Randle is alleging violations of the CFA and TILA.

## II. STANDARD FOR A 12(b)(6) MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *See Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002). Under Rule 12(b)(6), dismissal is appropriate if there is no possible interpretation of the complaint under which it can state a claim. *See Flannery*, 354 F.3d at 637.

When considering a motion to dismiss, this court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). While Randle's complaint refers to both the buyer's order and the retail installment contract ("RIC"), these documents are not attached to the complaint and under Fed. R. Civ. P. 10(c), Randle was under no obligation to attach them. However, Glendale did attach these documents as exhibits to its motion to dismiss. Because Randle discussed these documents in her complaint and the documents are central to her claim, they are considered part of the pleadings. *Venture Assoc. Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

## III. TRUTH-IN-LENDING ACT CLAIM (Count II)

The court will address Glendale's motion to dismiss the TILA claim first as that claim

4

provides the basis for federal court jurisdiction. Randle alleges that TILA requires timely written disclosures of financing terms including the amount financed. 15 U.S.C. § 1638(a)(2)(A) (the amount financed is computed "starting with the cash price less any down payment and/or trade-in."). Randle contends that the Retail Installment Contract ("RIC") prepared by Glendale does not accurately disclose the material terms required under TILA and its implementing regulation, Regulation Z, 12 C.F.R. § 226.18. According to Randle, the cash price was inflated by $6,000 thus "negating any compensation or offset that Defendant promised Plaintiff for her trade-in" and rendering the TILA disclosures inaccurate. Randle claims that, as a result, "the true cost of credit" was never disclosed to her in accordance with TILA, so she is entitled to damages under TILA.

Defendant moves to dismiss this count on the grounds that Randle does not allege that Glendale failed to disclose any of the required terms under TILA, only that Glendale inflated the selling price to negate Plaintiff's trade-in allowance. Glendale argues that both the selling price and the trade-in allowance were clearly marked on the RIC and the buyer's order, both of which were executed by Randle and that the allegations in the complaint "clearly establish Plaintiff's mistaken belief that the selling price of $15,995.00 was prior to her trade-in allowance when the documents state this amount as the price after the trade-in allowance."

"[TILA]'s main purpose is to allow consumers to compare credit rates so that they may make an informed use of credit." *Carmichael v. The Payment Center*, 336 F.3d 636, 639 (7th Cir. 2003). Pursuant to Regulation Z, which implements TILA, a creditor must disclose certain information to the borrower including, among other things, the identity of the creditor, the finance charge, and the total sale price. Regulation Z provides that the "finance charge" must be

5

disclosed as "[t]he finance charge, using that term, and a brief desrciption such as 'the dollar amount the credit will cost you.'" 12 C.F.R. § 226.18(d). Further, Regulation Z states that the "total sale price" in a credit sale must be disclosed as:

> the total sale price, using that term, and a descriptive explanation (including the amount of any downpayment) such as 'the total price of your purchase on credit including your downpayment of $____.'" The total sale price is the sum of the cash price, the items described in paragraph (b)(2), and the finance charge disclosed under paragraph(d) of this section."

12 C.F.R. § 226.18(j).

Randle's claim that the sale price (and thus the cost of credit) was misstated on the RIC and the buyer's order in violation of TILA is premised on the assumption that the price of the car was $15,995 as Oddo allegedly told Randle, and not $21,995, as provided in the documents. The determination as to what the actual price of the car was depends on whether any alleged prior oral agreements between the parties as to the price of the car will be barred by the parol evidence rule. The parol evidence rule has been applied to TILA claims. *Fox v. The Montell Corporation*, No. 01 C 299, 2001 WL 293632, *2 (N.D. Ill. March 19, 2001); *Anthony v. Community Loan & Inv. Corp.*, 559 F.2d 1363, 1369 (5th Cir. 1977) (in an attack on a TILA disclosure, finding that Georgia's parol evidence rule was "not in conflict with the purposes of [TILA]" and holding that a borrower could not assert that she was told that she was required to buy insurance because she had signed documents advising her that she was not required to do so); *Meadows v. Charlie Wood, Inc.*, 448 F. Supp. 717, 719-20 (M.D. Ga. 1978) (in an attack on a TILA disclosure, stating that plaintiff could not assert that he was told there would be no cash downpayment required when the documents provided for the downpayment).

Illinois has adopted the Uniform Commercial Code, which governs contracts for the sale

of goods over $500. Under the UCC's parol evidence rule, evidence of prior oral agreements or contemporaneous oral agreements cannot be used to vary or contradict the terms of an *integrated* written contract. *Fox*, 2001 WL 293632, at *2; 810 ILCS 5/2-202 (emphasis added). A contract is integrated if the parties intended it to be a final and complete expression of their agreement. *Id.* (citation omitted). "The UCC rejects the presumption that a written contract sets forth the parties' entire agreement." *Hessler v. Crystal Lake Chrysler-Plymouth*, 338 Ill. App. 3d 1010, 1020 (Ill. App. Ct. 2003) (citations omitted). Rather, to determine the intent of the parties as to integration, the court will look to a variety of factors including merger or integration clauses, disclaimer clauses, prior negotiations, any alleged extrinsic terms, and the sophistication of the parties. *Id.* Further, the determination of whether a contract is completely integrated is a question of law. *Id.*

In the instant case, taking all well-pleaded facts as true, the court cannot conclude that the contract is completely integrated. The buyer's order contains a statement which states that the "Purchaser acknowledges that dealer has made no representations regarding the character or quality of the vehicle, except as expressly stated herein." However, the court does not find that an acknowledgment regarding the parties' agreement as to the "character" and "quality" of the car operates as a blanket integration clause regarding all terms in the contract. While Randle alleges that Glendale's salesperson told her that the price of the car was $15,995, no facts are alleged as to any other extrinsic terms, nor are facts alleged specifically as to the sophistication of the parties. Accordingly, at this stage of the proceedings, the court cannot conclude that the parol evidence rule would bar Randle from putting forth evidence that the parties agreed that the price of the car was indeed $15,995 thus causing the TILA disclosures to be inaccurate. As such,

defendant's motion to dismiss the TILA count is denied.

## IV. ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT

Defendant moves to dismiss Plaintiff's claim under the CFA on three grounds. First, Glendale argues that Randle has failed to allege a deceptive act because Glendale contends, under Illinois law, "a Plaintiff who signs a document cannot plead a lack of understanding of its terms or that the contract misled her." Thus, Glendale argues that because the buyer's order and the RIC clearly state a selling price of $21,995.00, with a trade-in allowance of $6,000.00, the documents defeat any allegation that defendant misrepresented or inflated the selling price. Second, Glendale argues that Randle has failed to state a cause of action under the CFA because compliance with TILA precludes consumer fraud liability where the alleged fraud relates to the disclosures made in documents falling within TILA's purview, citing *Lanier v. Associates Finance, Inc.*, 114 Ill.2d 1 (1986). Finally, as to Randle's allegation that defendant falsely advertised that she was pre-approved for a truck loan, Glendale argues that Randle's CFA count should be dismissed because Randle failed to allege a deceptive act in that the advertisement states that plaintiff could drive home in a car *or* a truck, and given that Randle did drive home in a car, even if it was not the one that she initially chose, no deceptive act occurred.

In order to state a claim under the Illinois CFA, the plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) that the defendant intended for the plaintiff to rely on the deception; (3) and that the deception occurred in the conduct of a trade or commerce. *Covarrubias v. Bancomer, S.A.*, 351 Ill. App. 3d 737, 739 (Ill. App. Ct. 2004). Glendale asserts that Randle has failed to allege the first element–a deceptive act–because the RIC and buyer's order clearly state the selling price and the amount of the trade-in allowance and that it was

8

Randle's responsibility to read and understand the documents. In response to Glendale's first argument, Randle responds that she "is not alleging that she did not understand the terms of the written contract, or that the written contract somehow misled her. Rather, what she is alleging is that she was fraudulently induced to enter into the purchase contract by Glendale's oral misrepresentations." Resp. at 8. This court agrees with Glendale that by alleging that she "began to sign the paperwork without reading it carefully" and finished signing even after she was told that the monthly car payments were higher than she wanted, Randle has pled herself out of court. Even accepting as true Randle's allegation that Oddo initially misrepresented the sale price of the car, Randle had an obligation to read the documents presented to her, especially when Glendale's representative remarked on the monthly payment, which was higher than Randle wanted to pay. *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 (7th Cir. 1989) ("basic contract law establishes a duty to read the contract; it is no defense to say, 'I did not read what I was signing.'") (citation omitted); *see also AGFA Corp. v. Wagner Printing, Inc.*, No. 02 C 2400, 2002 WL 1559663, *4 (N.D. Ill. July 10, 2002) (in CFA claim in which Plaintiff claimed defendant "surreptitiously" added liquidated damages provision to purchase agreement, questioning "whether adding an express and unambiguous term in a two-page written contract between sophisticated parties with a history of doing business is the type of material misrepresentation contemplated by the ICFA."). Randle had a duty to review the relatively short buyer's order and RIC prior to purchasing the car and thus cannot state a claim under the CFA.

The second argument is easily dealt with in that the court has already found that Randle has stated a claim under TILA; thus because compliance with TILA has not been determined at this point in the proceedings, the principle articulated in *Lanier* is inapplicable.

As to Glendale's final argument that Randle fails to allege a deceptive act as to Glendale's advertising because the advertisement stated that she was pre-approved for a loan for a truck *or* a car, and "[t]he fact the specific truck Plaintiff requested was not pre-approved for a loan does not create a cause of action for fraud." Randle does not respond to Glendale's motion to dismiss the Illinois Consumer Fraud Act counts as it relates to Glendale's alleged fraudulent advertising; however, the court finds that Randle states a claim under the Illinois CFA at this stage of the litigation. Randle alleges a deceptive act and that the deceptive act occurred in the course of commerce. While Randle does not expressly allege that Glendale intended that she rely on the allegedly deceptive advertisement, the court must draw all reasonable inferences in Randle's favor and the court deems it reasonable to infer from Randle's well-pleaded facts that such an intention could have existed.

V. **CONCLUSION**

For the foregoing reasons, the court grants defendant's motion to dismiss Count II of plaintiff's complaint [3-1] to the extent it seeks relief for defendant's alleged misrepresentation regarding the sale price of the car and the amount of the trade-in allowance. The court denies defendant's motion to dismiss Count I of plaintiff's complaint and Count II as to plaintiff's false advertising claim. [3-1]

ENTER:

Blanche M. Manning
United States District Court Judge

DATE: 2-2-05